MONTGOMERY, EXECUTOR *v*. BLANKENSHIP.

4-9500                                         239 S. W. 2d 758

Opinion delivered May 14, 1951.

Rehearing denied June 18, 1951.

*A. L. Burford* and *Shaver, Stewart & Jones,* for appellant.

*T. B. Vance* and *James F. Vance,* for appellee.

ED. F. McFADDIN, Justice. The present case is the sequel to *Montgomery* v. *Blankenship,* 217 Ark. 357, 230 S. W. 2d 51, decided by this Court on May 29, 1950 (and hereinafter referred to as "the first case"). In the opinion in that case we (a) sustained the "Living Trust" —against the claim of lack of mental capacity of Mrs. Bottoms—because the "Living Trust" was incorporated by the reference into Mrs. Bottoms' Last Will and Testament, and the will had not been contested in due time; and (b) we adjudged that the $17,426.33 fund in Court went to Mrs. Bottoms' heirs at law, because the executors, and also the trustee of the "Living Trust," had *failed* to appeal from the order of the Chancery Court adjudging said fund ($17,426.33) to belong to the heirs.

In accordance with our opinion in the first case, the Miller Chancery Court entered a decree after mandate; and directed that the said fund be paid into the Miller Probate Court, intending thereby that the Probate Court would distribute the fund upon proof of heirship. But in the Probate Court the executor, Montgomery,[1] insisted that the said fund should be used to pay the debts of the deceased, rather than be distributed to the heirs. The Miller Probate Court ordered the executor to pay the fund to the heirs;[2] and from that order the executor has appealed.

We affirm the Probate Court order here challenged. In our opinion in the first case, we said:

"As to the cash item of $17,426.33, an additional question is presented. . . . As already pointed out, the trial court made no special findings, but found 'in favor of the plaintiffs and against the defendants' and ordered the stock certificates and cash turned over to

[1] He is now the sole executor because of the death of his co-executor, Clark.

[2] By stipulation the proof of heirship and the amount to go to each separate person are not issues in this appeal.

the executor. Appellants excepted to all the findings and holdings of the chancellor 'save the finding and decree with respect to the item of $17,426.33 aforesaid'. . . . The decree finding 'in favor of the plaintiffs and against the defendants' was a finding against appellants as to all issues in the case. The effect of this was to hold that the appellees, as heirs at law of Mrs. Bottoms, would take title to the cash as against any claim thereto by the bank as trustee. Since no appeal was taken from the ruling of the chancellor as to the cash item, we cannot consider the correctness of that part of the decree.''

What might have been our decision regarding the payment of debts out of the said fund—if the executors had excepted to, and appealed from, the Chancery adjudication of the fund in the first case—is a matter that cannot now be discussed. The determinative facts are that: (1) in the trial in the Chancery Court in the first case the executor was a party; (2) he then knew of debts against Mrs. Bottoms' estate; (3) he had ample opportunity in the first case to make all of his claims to the fund ($17,426.33) then before the Court; (4) the Chancery Court awarded the said fund to the heirs; and (5) the executor acquiesced by failing to except to, or appeal from, such portion of the decree in the first case. Because of these facts we hold that the executor cannot now be allowed to defeat the adjudication made in the first case. See *Williams* v. *Wheeler*, 131 Ark. 581, 199 S. W. 898.[3] The decree in the first case is *res judicata* of the issue regarding the said fund.

Affirmed.

Justice PAUL WARD dissents.

PAUL WARD, J., dissenting. I do not agree with the majority that the $17,426.33 (herein referred to ''cash item'') should be turned over directly to the heirs of Mrs.

[3] In that case we used this language applicable to the case at bar:
"In the instant case, however, it was not only a fund in court, but the rights of all parties to the suit in it had been finally adjudicated. Unless they could obtain a cancellation, modification or reversal of the decree, they were remediless."

Bottoms. It should have been placed in the hands of the executor, as assets of the estate, to be used and distributed according to the provision of the Probate Code and particularly § 62-2903 (sup.) Ark. Statutes. This cash item has in some way been involved in four separate court actions and the question all the time has Court, the executor listed this item as assets of the estate, but at the same time he listed three stock certificates as belonging to the Trustee. Second, suit was brought in Chancery Court by the heirs (primarily we can assume) to have the certificates placed back in the hands of the executor, and it was there so held. Third, the last ruling was appealed to this court where the chancellor was reversed holding that the certificates belonged to the Trustee. The cash item was not directly involved, but the court commented (as set out in the majority opinion) as follows: (a) . . . "the trial court . . . ordered the . . . cash turned over to the executor." (b) Since no appeal was taken from the ruling of the chancellor as to the cash item, we cannot consider the correctness of that part of the decree." This leaves the cash item in the hands of the executor where it was placed in both previous actions. The fourth action involving this cash item, of course, is the probate suit resulting in this appeal. The heirs have no right to demand this money from the executor until he has had an opportunity to liquidate all lawful claims against the state.